UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

RAAKESH C. BHAN, M.D.,

        Plaintiff,

v.

BATTLE CREEK HEALTH SYSTEM,
TRINITY HEALTH SERVICES,
PATRICK GARRETT, JEFFREY
MITCHELL, M.D., DENISE BROOKS-
WILLIAMS, BORGESS MEDICAL
CENTER, ASCENSION HEALTH,
PAUL A. SPAUDE, TERRY BAXTER,
M.D., and ROBERT BRUSH,

        Defendants.

                             /

Case No. 1:10-CV-202

HON. GORDON J. QUIST

## **OPINION**

Plaintiff, Raakesh Bhan, M.D., filed this action against Defendants, Battle Creek Health System (BCHS), Trinity Health Services (Trinity), Patrick Garrett, Jeffrey Mitchell, M.D., Denise Brooks-Williams (collectively the "BCHS defendants"),[1] and Borgess Medical Center ("Borgess"), Ascension Health, Paul A. Spaude, Terry Baxter, M.D., and Robert Brush (collectively the "Borgess defendants");[2] (all defendants collectively referred to as "Defendants"). Defendants have filed motions[3] to dismiss most of the counts in the Second Amended Complaint (Dkt. #51) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The eighteen-count Second Amended Complaint alleges: Bhan was discriminated against in violation of Michigan's Elliott-Larsen Civil Rights Act,

---

[1] Mitchell is the Chief Medical Officer of BCHS, Brooks-Williams is the President and CEO of BCHS, and Garrett is the former CEO of BCHS.

[2] Spaude is the President and CEO of Borgess, Baxter is the Chief Medical Officer of Borgess, and Brush is the Chief Quality Officer of Borgess.

[3] Docket number 52 filed by Garrett, docket number 53 filed by the BCHS defendants, and docket number 55 filed by the Borgess defendants.

M.C.L. § 37.2302 (Count 1); BCHS, Garrett, Mitchell, Brooks-Williams, and Trinity violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (Count 2); tortious interference with Bhan's advantageous business relationships with his patients and with the two hospitals (Counts 3, 4, 5 & 6); defamation (Counts 7 & 10); a 42 U.S.C. § 1985 claim for denying Bhan his right to due process (Counts 8 & 9); breach of contract (Counts 11, 12 & 13); a conspiracy to adversely affect the medical privileges of Bhan (Count 14); and injunctive relief against BCHS, Borgess, and Integrated Health Partners[4] (Counts 15, 16, 17 & 18).

For the reasons set forth below, as to Ascension and Trinity, the motions will be granted and they will be dismissed from all counts. Furthermore, the motions will be granted as to the remaining defendants and counts except: the motions will be denied as to Count 1, Count 2 against BCHS, and Count 7.

## MOTION STANDARD

This Court is well informed of the standard of review for a Fed. R. Civ. P. 12(b)(6) motion to dismiss. It need not be repeated.

## ANALYSIS

### I. ALL COUNTS AGAINST TRINITY AND ASCENSION

Bhan's allegations are not sufficient to state a claim against Trinity or Ascension. Bhan pleads no <u>facts</u> to justify piercing the corporate veil. He has not alleged that the separate corporate existence between Trinity and BCHS or between Ascension and Borgess has been used to subvert justice or cause some other unfair result. *Seasword v. Hilti, Inc.*, 449 Mich. 542, 547-48, 537 N.W.2d 221, 224 (1995) (affirming the dismissal of a claim on the pleadings because "plaintiff has alleged no facts, nor offered any proof that defendant and [its parent entity] have abused their

---

[4] Integrated Health Partners provides "credentialing and/or recredentialing of physicians in Calhoun County." (2d Am. Compl. ¶ 15.) It is not named as a defendant.

2

presumably separate and distinct corporate forms"). Bhan's conclusory legal allegations that the parent corporations are the "alter ego" of their subsidiaries, and therefore vicariously liable are insufficient to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Therefore, all claims against Trinity and Ascension will be dismissed.

## II. BCHS DEFENDANTS' IMMUNITY

### A. CONTRACTUAL IMMUNITY

This Court is unable to say whether the medical staff bylaws create a valid contract, and thus a valid release of liability pursuant to that contract. Among all state and federal courts, "there is a split of authority on the issue of whether medical-staff bylaws *ever* constitute a contract." *Grain v. Trinity Health*, 431 F. App'x 434, 450 (6th Cir. 2011). This Court, like the court in *Grain*, only found one unpublished case from the Michigan Court of Appeals which said that medical staff bylaws do <u>not</u> create a contract. *See Macomb Hosp. Ctr. Med. Staff v. Detroit-Macomb Hosp. Corp.*, 1996 WL 33347517, at *1 (Mich. App. 1996) (unpublished). Furthermore, *Grain* has a meaningful distinction from Bhan's case. In *Grain*, the court held that the medical staff bylaws did not constitute a contract because the bylaws contained an express disavowment that the bylaws "shall not constitute a contract." 431 F. App'x at 450. No such language exists in BCHS's bylaws.

Finally, neither a contract nor staff bylaws can grant immunity against claims alleging violations of federal or state laws prohibiting discrimination.

Therefore, at this stage of the litigation, the Court cannot say as a matter of law that the medical staff bylaws create a valid contract. But, as discussed below, the bylaws are relevant to Bhan's breach of contract claims.

3

  B. S<small>TATUTORY</small> I<small>MMUNITY</small>

At this stage, the Health Care Quality Improvement Act, 42 U.S.C. 11101, *et seq,* ("HCQIA") does not prevent Bhan from going forward with his claims. First, the HCQIA provides immunity only to damages; Bhan seeks injunctive relief for each claim in addition to damages. Second, it is unclear whether any defendant took part in the actual peer review process to which the HCQIA affords immunity. Third, Bhan has pleaded sufficient facts to avoid the statutory immunity; he goes at length to allege that his Fair Hearing did not comport with the requirements enumerated in § 11112(a).

 **III.** C<small>LAIMS</small>

  A. V<small>IOLATION OF</small> M<small>ICHIGAN'S</small> E<small>LLIOT</small> L<small>ARSEN</small> C<small>IVIL</small> R<small>IGHTS</small> A<small>CT</small> (C<small>OUNT</small> 1)

No party has moved to dismiss it this count.

  B. ADA V<small>IOLATION</small> (C<small>OUNT</small> 2)

This Court recognizes that there are arguments on both sides of the issue of whether Title III of the ADA protects a physician who is seeking, has, or is deprived of staff privileges. At this point in time, considering the status of the facts and law, this Court will deny BCHS's motion to dismiss Count 2. After the record is further developed, the Court will be in a better position to determine what Bhan's actual status is–i.e., whether he is an employee, client, customer, contractor, affiliate, etc.–and, whatever he is, whether he is covered by the ADA.

Garrett, Mitchell, and Brooks-Williams will be dismissed from the ADA claim. They do not "own, lease, or operate" BCHS–the place of public accommodation–within the meaning of 42 U.S.C. § 12182(a). *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) (finding the ADA does not impose liability upon individuals); *Coddington v. Adelphi Univ.*, 45 F. Supp. 2d 211, 217 (E.D.N.Y. 1999) (conducting a survey of the circuit court cases which have addressed the issue

of individual liability under the Public Accommodations section and finding "it is the institution that operates the place of public accommodation and is, thus, the proper defendant"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002) (individual officers and faculty members of a university could not be held liable under Title III); *Spencer v. Earley*, 278 F. App'x 254, 257 (4th Cir. 2008); *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995) (holding that a franchisor of an ice cream stand did not "operate" the franchisor's privately owned stand and thus was not individually liable under Title III); *see also Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) (stating that "the ADA addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations.").

Moreover, Bhan conditionally concedes that individual liability under the ADA does not apply: "So long as the individual racial discrimination claims survive against the individual Co-Defendants, the Plaintiff recognizes that only the institutions are liable under the public accommodations portion of the [ADA]." (Pl.'s Br. at 15.) Since Bhan's race discrimination claim survives, Bhan agrees that the individual defendants should be dismissed from Count 2.

      C.    TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP (COUNTS 3, 4, 5, & 6)

      1.    *Count 3*

First, Bhan does not allege any facts to draw a reasonable inference that the defendants acted <u>for the purpose of</u> interfering with Bhan's business relationship. *See Badiee v. Brighton Area Sch.*, 265 Mich. App. 343, 367, 698 N.W.2d 522, 539 (2005) ("[O]ne who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law <u>for the purpose of</u> invading the contractual or business relationship of another." (emphasis added)). Bhan makes no allegations with respect to Spaude. With regard to Baxter and Brush, Bhan alleges that Baxter and Bhan benefitted

5

financially from a relationship that existed in January 2007, when Borgess implemented its bedside policy. Bhan somehow makes an inferential leap and alleges that the defendants interfered with his business relationships by revoking his privileges in April 2009 in order to financially benefit. (*See* 2d Am. Compl. Ex. C.) Bhan has not alleged any facts for the Court to draw a reasonable inference that this is plausible.

Also, Bhan does not allege any <u>facts</u> that the defendants committed a per se wrongful act, or that they acted with malice and without justification. *Dalley v. Dykema Gossett*, 287 Mich. App. 296, 324, 788 N.W.2d 679, 696 (2010) ("To establish that a defendant's conduct lacked justification and showed malice, the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference.").

Count 3 will be dismissed.

### 2. *Count 4*

Bhan alleges that Brooks-Williams knew of Bhan's expected business relationship with his future patients, (2d. Am. Compl. ¶ 88), but then states that separate defendants, Mitchell and Garrett, interfered with that relationship. (*Id.* ¶ 89.) Bhan does not allege knowledge of the expectancy <u>on the part of</u> the interferer. *See Trepel*, 135 Mich. App. 361, 374, 354 N.W.2d 341, 346 (1984). Also, Bhan does not allege any <u>facts</u> that the defendants committed a per se wrongful act, or that they acted with malice and without justification.

Count 4 will be dismissed.

### 3. *Count 5*

Bhan does not allege facts from which to draw a reasonable inference that any defendant revoked Bhan's medical privileges for the purpose of benefitting financially. *See Cedroni Assoc. v. Tomblinson, Harburn Assoc.*, 290 Mich. App. 577, 608, 802 N.W.2d 682, 699 (2010) (stating that

an agent can only be held liable for tortious interference if the agent acts not for the benefit of the entity, but for his or her own benefit or pursuant to a personal motive).  Bhan states that Baxter and Brush benefitted from a relationship that existed in January 2007.  However, the affirmative act that he alleges, the revocation and suspension of his medical staff privileges, took place in 2009.  Also, Bhan does not allege any <u>facts</u> that the defendants committed a per se wrongful act, or that they acted with malice and without justification.  Based upon Bhan's allegations, the Court cannot say that Bhan alleges more than a mere possibility of misconduct that entitles him to relief.  *See Ashcroft*, 129 S. Ct. at 1950.

Count 5 will be dismissed.

    4.  <u>Count 6</u>

Bhan alleges that Brooks-Williams, the President and CEO of BCHS, interfered with his relationship with BCHS.  Count 6 will be dismissed because Bhan does not allege that Brooks-Williams, a corporate agent of BCHS, acted for her own benefit or pursuant to a personal motive. *See Cedroni*, 290 Mich. App. at 606-08, 802 N.W.2d 698-99.  Also, Bhan does not allege any <u>facts</u> that the defendants committed a per se wrongful act, or that they acted with malice and without justification.

Count 6 will be dismissed.

    D.  <span style="font-variant:small-caps">Defamation (Counts 7 & 10)</span>

Bhan's allegations do not contain more than labels and conclusions. *See Twombley*, 550 U.S. at 555.  Indeed, the report that Bhan refers to merely restates the outcome of the Fair Hearing conducted by BCHS.  Moreover, by referring to "Exhibit D" only, which contains many statements that are undoubtedly true, the allegations fail to give BCHS fair notice upon which grounds Bhan's defamation claim rests. *Twombley*, 550 U.S. at 555.  Therefore, these allegations do not sufficiently state a claim.

7

Moreover, Bhan's allegations as to Mitchell and Garrent are not identified and alleged with specificity. *See Hernden v. Consumers Power Co.*, 72 Mich. App. 349, 356, 1249 N.W.2d 419, 422 (1976) (holding that a libel plaintiff fails to state a claim where he does not allege where, when, or to whom the statement was published); *Ledl v. Quik Pik Food Stores, Inc.*, 133 Mich. App. 583, 589, 349 N.W.2d 529, 532 (1984) (elements of defamation must be specifically pleaded, including the publication of the alleged defamatory words). Bhan does not assert to whom the statements were made, when they were made, or whether these statements were unprivileged.

Therefore, Count 10 will be dismissed.

With respect to Count 7, the Borgess defendants do not join in BCHS's argument to dismiss Bhan's common law defamation claim. Therefore, the Court will not consider whether Count 7 survives the motion to dismiss.

### E. 42 U.S.C. § 1985 - RIGHT TO DUE PROCESS (COUNTS 8 & 9)

First, Bhan does not plead a conspiracy with specificity. In Count 8, Bhan does not identify the persons who allegedly conspired. In Count 9, Bhan only goes so far as to say "the conspiratorial actions of the Defendants all as specifically pled in the foregoing paragraphs, were engaged in an effort to conspire" to violate Bhan's rights. (2d Am. Compl. ¶ 123.) But, Bhan pled nothing in the "foregoing paragraphs" that identified specific individuals who *conspired* against Bhan for the purpose of discriminating against him. These conclusory allegations that a conspiracy existed are insufficient to support a claim. *See Center for Bio-Ethical Reform*, 477 F.3d at 832 (dismissing a § 1985 claim because "Plaintiffs' complaint does not set forth specific allegations supporting their conspiracy claim, but rather vaguely asserts that Defendants 'conspired'").

Second, Bhan does not allege a conspiracy existed for discriminating against a *class of persons*. To sustain a claim under § 1985(3), Bhan must prove that he was discriminated against on account of his membership in a protected class. *Estate of Smithers v. City of Flint*, 602 F.3d 758,

8

765 (6th Cir. 2010). Bhan supports his § 1985 claims by alleging that his due process rights were violated, not that he was discriminated against based upon his membership in a protected class.

Finally, to the extent that the officers were acting within the scope of employment, which Bhan has pled throughout his complaint, the intra-corporate conspiracy doctrine precludes Counts 8 and 9. *See Bays v. Canty*, 330 F. App'x 594, 594 (6th Cir. 2009) ([S]ince a corporation only acts through its officers, a group of corporate officers acting within the scope of employment cannot create a conspiracy.").

Therefore, Counts 8 and 9 will be dismissed.

### F. BREACH OF CONTRACT (COUNTS 11, 12, & 13)

Bhan alleges that the medical staff bylaws of Borgess and BCHS were contracts between Bhan and the respective hospitals. He alleges that the hospitals broke these contracts by failing to follow the proper procedures for the suspension and revocation of his privileges. Each hospital's medical staff bylaws, however, contains a release of legal liability, as described above. Therefore, taking Bhan's allegations as true, he has granted a broad release of liability and immunity for breach of contract to BCHS, Borgess, and their representatives.

In Michigan, "[t]he validity of a release turns on the intent of the parties. A release must be fairly and knowingly made to be valid. If the language of a release is clear and unambiguous, the intent of the parties is ascertained from the plain and ordinary meaning of the language." *Batshon v. Mar-Que Gen. Contractors, Inc.*, 463 Mich. 646, 650 n.4, 624 N.W.2d 903, 905 n.4 (2001) (citations omitted). Here, the releases of liability contained in BCHS's and Borgess' medical staff bylaws clearly and unambiguously release each hospital from legal liability arising from the alleged deficiencies that Bhan raises in his breach of contract claims.

If Bhan states a valid breach of contract claim, then Counts 11, 12, 13, and quite likely others, are precluded by the release of liability. If the bylaws do not create a contract, then these

9

counts would be dismissed. Thus, assuming, without deciding, that the medical staff bylaws constituted an enforceable contract, Bhan's breach of contract claims will all be dismissed as falling under the release from liability that Bhan entered into by applying for medical staff privileges. *See Feyz v. Mercy Mem'l Hosp.*, 2010 WL 23692, at *6 n.8 (Mich. App. Jan. 5, 2010) (per curiam) (affirming the dismissal of a breach of contract claim on other grounds while "assum[ing], without deciding, that the medical staff bylaws constituted an enforceable contract").

Therefore, Counts 11, 12, and 13 will be dismissed.

### G. CONSPIRACY TO ADVERSELY AFFECT MEDICAL PRIVILEGES OF BHAN (COUNT 14)

"[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384, 670 N.W.2d 569, 580 (2003), *aff'd* 472 Mich. 91, 693 N.W.2d 358 (2005). Bhan does not allege that it is a tort for a business to discuss how to remove competitors. Even though Bhan incorporates his first thirteen counts into Count 14, Bhan does not allege that the parties conspired to commit those torts through concerted action. Indeed, each tort is alleged against either Borgess defendants or BCHS defendants, but not both. Therefore, Count 14 will be dismissed because Bhan does not allege that the defendants conspired to commit a separate, actionable tort.

### H. INJUNCTIVE RELIEF (COUNTS 15, 16, 17, & 18)

"Injunctive relief" is a remedy. A "cause of action" is the right to assert some independent legal right. In a legal action, rights and remedies are separate elements. "[W]here there is a legal right, there is also a legal remedy by suit or action at law, *whenever that right is invaded*." *Marbury v. Madison*, 5 U.S. 137, 163 (1803) (emphasis added); *see also Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004) ("[A] traditional injunction is a remedy potentially available

only after a plaintiff can make a showing that some independent legal right is being infringed . . . .").  Bhan does not identify, allege, or argue that any cause of action in these counts give him the right to assert some legal right that would entitle him to the remedy that he is seeking.  Therefore, Counts 15, 16, 17, and 18 will all be dismissed because they literally do not state a cause of action.

## CONCLUSION

As to Ascension and Trinity, the motions will be granted and they will be dismissed from all counts.  The motions will be granted as to the remaining defendants and counts except: the motions will be denied as to Count 1, Count 2 against BCHS, and Count 7.

A separate order will issue.


Dated:  February 14, 2012                           /s/ Gordon J. Quist
                                                              GORDON J. QUIST
                                                   UNITED STATES DISTRICT JUDGE

11