UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

RAAKESH C. BHAN,

    Plaintiff,

v.                                                                                                Case No. 1:10-CV-202

BATTLE CREEK HEALTH SYSTEM,                                       HON. GORDON J. QUIST
et al.,

    Defendants.
_____/

# OPINION

Plaintiff, Raakesh Bhan, filed this action against Defendants Battle Creek Health System (BCHS), Trinity Health Services, Patrick Garrett, Jeffrey Mitchell, Denise Brooks-Williams, and Borgess Medical Center (Borgess), Ascension Health, Paul Spaude, Terry Baxter, and Robert Brush (collectively Borgess defendants). On February 14, 2012, this Court dismissed Bhan's claims against all parties, except Count 1 (Elliott-Larsen Civil Rights Act) and Count 7 (defamation) against the Borgess defendants, and Count 2 (Americans with Disabilities Act) against BCHS. The Borgess defendants and BCHS have filed Motions for Summary Judgment (docket nos. 107, 128, 111). For the reasons set forth below, the Court will grant the motions.[1,2]

## I. BACKGROUND

Bhan is a licensed medical doctor and a partner of the private medical practice group Critical Care Pulmonary Medicine PC (CCPM). Bhan held hospital privileges at BCHS and Borgess hospitals, among others, which allowed him to serve his patients while they were admitted to those

---

[1] The parties have requested oral argument on the motions. However, the motions have been fully briefed, and the Court believes oral argument to be unnecessary. W.D.Mich.LCivR 7.2(d).

[2] Rather than amending its original motion, BCHS has filed two motions for summary judgment. (Docket nos. 107, 128).

hospitals. Bhan collected revenue by billing his patients or their insurers directly, rather than billing through the hospitals. In 2007, BCHS and CCPM entered into a contract by which CCPM would provide a doctor to serve as the medical director of BCHS's Critical Care Department. CCPM designated Bhan to serve as medical director. In exchange, BCHS paid CCPM for the hours worked by the medical director.[3] It is not clear what portion, if any, of the contractual wages was paid to Bhan. BCHS did not pay Bhan fringe benefits. While medical director, Bhan held hospital privileges at BCHS and continued his private practice.

## A. Borgess

On February 27, 2007, Bhan suffered a stroke. After several months of rehabilitation, Bhan resumed his duties as a doctor. In August 2008, Borgess's Chief Quality Officer, Robert Brush, met with Bhan to discuss his quality of care of a patient. On September 5, 2008, Brush sent Bhan a letter stating that a Borgess Peer Review Committee would conduct a review of Bhan's patient records to assure that his assessments, as documented, were improving. By April 2009, Brush and the Peer Review Committee had reviewed 14 of Bhan's cases. They drafted a memorandum summarizing the Committee's findings and explained that the review demonstrated "incompetent medical practice and should be referred to the Credentials Committee for further action." (Brush Aff. ¶ 6, Docket no. 113, Page ID 2519.) On April 14, 2009, the Credentials Committee met and appointed an ad hoc three-person subcommittee to investigate Bhan's clinical competence. The Credentials Committee does not have authority to impose suspension of a doctor's privileges, but it recommended a suspension. On April 16, 2009, the Medical Executive Committee (MEC) met and approved the suspension, pursuant to Article VIII, section 10(c) of the Borgess staff bylaws. On April 27, 2009,

---

[3] According to the contract, BCHS paid CCPM $92.00 per hour for approximately 32 hours per month, averaging approximately $2,944.00 per month. (Ex. 2, Docket no. 107, Page ID 2277.) In its Motion for Summary Judgment (docket no. 107), BCHS alleges that "BCHS paid Bhan's practice group a [sic] $1,000 month in exchange for Bhan's agreement to serve as Medical Director of the Critical Care Department." (*Id.* at Page ID 2231.) The reason for the discrepancy in amount is unclear.

the MEC met again and adopted the recommendations of the Credentials Committee. On April 28, 2009, the Borgess Board of Trustees met and voted to continue Bhan's suspension while obtaining an expedited outside peer review. On June 9, 2009, the Credentials Committee met and reviewed a report from an outside peer reviewer and voted to submit a "request for corrective action" of Bhan to the MEC. In a memorandum dated June 11, 2009, the Credentials Committee stated that its reason for the request was its concern that Bhan's care was below the standard of care on the basis of his poor documentation, failure to conduct or document appropriate clinical assessments and examinations, and failure to appropriately attend to patients. (Brush Aff. ¶ 13, Docket no. 113, Page ID 2521.) On June 19, 2009, MEC met and interviewed the outside peer reviewer and Bhan. It then voted to recommend that Bhan's privileges and medical director appointment be revoked and his suspension continue during appeal. Bhan received a hearing in November 2010. Bhan requested and received an appeal and was represented by an attorney at the appeal. The appellate panel recommended to the full Board of Trustees that Bhan's suspension and revocation be made final. On February 22, 2011, the Board of Trustees adopted the recommendation and Bhan's privileges were revoked.

### B. BCHS

The record contains fewer details of BCHS's revocation of Bhan's privileges. On January 26, 2010, BCHS informed Bhan that it would not renew his privileges for the Intensive Care Unit, although Bhan continued to hold internal medicine privileges. BCHS provided Bhan with a "fair hearing" pursuant to its Fair Hearing Plan of the BCHS bylaws. Bhan's seven-day hearing occurred in September and November 2010. Bhan also received an appeal. At a later time, BCHS also informed Bhan that it would not renew his other hospital privileges. Bhan also requested a fair hearing, which took place in August 2012. The panel released findings in October 2012.

Bhan filed this case in February 2010, and the Court entered an order staying the case (docket no. 31), which the Court lifted in June 2011 (docket no. 42) after Bhan had exhausted his administrative remedies at BCHS and Borgess.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Material facts are facts which are defined by substantive law and are necessary to apply the law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A dispute is genuine if a reasonable jury could return judgment for the non-moving party.  *Id.*

In deciding a motion for summary judgment, the court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"  *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010).

## III.  DISCUSSION

### A.  Elliott-Larsen Civil Rights Act Claim

Bhan alleges that the Borgess defendants discriminated against Bhan on the basis of his race in violation of the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2302(a).  The Act provides, in relevant part:

Except where permitted by law, a person shall not:

>  (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

*Id.* A place of public accommodation "means a business, or an educational, refreshment, entertainment, recreation, health, or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." *Id.* § 37.2301(a). In *Haynes v. Neshewat*, 477 Mich. 29, 729 N.W.2d 488 (2007), the Michigan Supreme Court held that an African-American physician with hospital privileges stated a claim for race discrimination under § 37.2302(a) against a hospital and its chief of staff for restrictions placed on the physician's privileges. *Id.* at 37, 729 N.W.2d at 493. To state a claim under § 37.2302(a), a plaintiff must establish four elements: (1) discrimination based on a protected characteristic, (2) by a person, (3) resulting in the denial of full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations, (4) of a place of public accommodation. *Id.* at 36, 729 N.W.2d at 492.

In this case, the parties dispute the first element. A plaintiff can establish unlawful discrimination under § 37.2302(a) by either producing direct evidence of discrimination, or indirect evidence by presenting a *prima facie* case of discrimination in accordance with the *McDonnell Douglas* framework. *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462, 628 N.W.2d 515, 520–21 (2001); *Schellenberg v. Rochester Mich. Lodge No. 2225*, 228 Mich. App. 20, 32, 577 N.W.2d 163, 169–70 (1998). To establish a *prima facie* case of discrimination under § 37.2302(a), a plaintiff must show that he is a member of a class deserving of protection under the statute, and that for the same or similar conduct, he was treated differently than similarly situated persons outside the protected class. *See Schellenberg*, 228 Mich. App. at 33–34, 577 N.W.2d at 169.

In this case, Bhan has failed to establish a *prima facie* case under § 37.2302(a). Although the parties agree that Bhan is of Indian descent, and therefore "a member of a class deserving protection under the statute," Bhan has not shown that he was "treated differently than similarly situated persons outside the protected class." *Schellenberg*, 228 Mich. App. at 33–34, 577 N.W.2d at 169. "It is fundamental that to make a comparison of [] plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly-situated *in all respects*." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis in original). "[T]o be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*; *see also Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (finding a plaintiff need not demonstrate an exact correlation, but must establish that a comparator is similarly situated to plaintiff "in all *relevant* aspects."); *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (to be similarly situated, a comparator must have engaged in an act of "comparable seriousness").

In this case, Bhan has not offered any evidence that someone similarly situated was treated differently. The factual basis of Bhan's claim is his subjective belief that defendants Baxter and Brush and other Caucasian doctors at Borgess would not "have anything to do with [him]." (Bhan Dep., Ex. 1, Defs.' Mot. Summ. J., Docket no. 112-1, Page ID 2507.) Bhan testified that Baxter would not sit down with Bhan, have a meal with him, or talk to him professionally. (*Id.* at 2506.) He testified that Baxter would only do those things with Caucasian people. (*Id.*) He also testified that, generally, Caucasian doctors at Borgess would "pretend like [Bhan] didn't exist." (*Id.*) These allegations alone are insufficient to constitute a *prima facie* case of discrimination. Moreover, Bhan's own testimony suggests that Bhan believes that the reason he was targeted for revocation

6

of his privileges is because he spoke in favor of another doctor whose privileges were being reviewed, not because of his race. (Bhan Dep., Ex. 1, Docket no. 112-1, Page ID 2500.) Bhan stated that "from that point onwards, everything went bad in my life." (*Id.*) This undermines Bhan's theory that he was targeted on the basis of race.

*Brintley v. St. Mary Mercy Hospital* offers a useful comparison to this case. No. 09-cv-14014, 2012 WL 5817237 (E.D. Mich. Nov. 16, 2012). In *Brintley*, an African-American female doctor sued a hospital for discrimination on the basis of race and sex in violation of the Elliott-Larsen Act after it revoked her hospital privileges. *Id.* at *7–*8. Brintley identified two Caucasian doctors, whom she argued were similarly situated but differently treated by the hospital. However, the court found that one doctor was not similarly situated because she worked in a different department under different supervisors and the second doctor's actions were not of comparable seriousness. *Id.* at *21–*22. Thus, even though Brintley identified possible comparators, the court found they were not similarly situated. In this case, Bhan does not even identify doctors who were similarly situated to support his allegation of racial discrimination. Therefore, he cannot establish a *prima facie* case of discrimination.

Even if this court were to find that Bhan had established a *prima facie* case, Bhan cannot "demonstrate by a preponderance of the evidence that the legitimate reasons offered by Defendants were in fact a pretext for discrimination." *Id.* at *22. Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant to present a legitimate, non-retaliatory reason for terminating the plaintiff. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). If the defendant succeeds, the burden shifts back to the plaintiff to show that the defendant's proffered reason was a pretext for unlawful discrimination. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). "Although the burdens of production shift, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the

7

plaintiff.'" *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093 (1981)). To establish pretext, a plaintiff is required to show by a preponderance of the evidence either that (1) the proffered reason had no basis in fact, (2) the reason did not actually motivate the plaintiff's discharge, or (3) the reason was insufficient to motivate discharge. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, *as recognized by Geiger v. Tower Auto*, 579 F.3d 614, 621 (6th Cir. 2009). Michigan courts have adopted an "intermediate," test for determining whether a plaintiff has introduced sufficient evidence of pretext to survive summary judgment: a plaintiff must show that the proffered reason was a pretext for the specific type of discrimination. *Lytle v. Malady*, 458 Mich. 153, 175–76, 579 N.W.2d 906, 916 (1998). Thus, a plaintiff alleging race-based discrimination "must not merely raise a triable issue that the employer's proffered reason was pretextual, but [must show] that it was a pretext for [race] discrimination." *Id.*

In this case, the Borgess defendants argue that the hospital revoked Bhan's privileges for failure to maintain an applicable standard of care on the basis of (1) poor and inadequate documentation in patient files, (2) failure to conduct and document appropriate clinical assessments and examinations of patients, and (3) failure to appropriately attend to patients. (Brush Aff. ¶ 13, Docket no. 113, Page ID 2521; Baxter Aff. ¶ 12, Docket no. 114, Page ID 2609–10.) Having articulated a legitimate, non-discriminatory reason for revocation of Bhan's privileges, the burden of production shifts back to Bhan to demonstrate by a preponderance of the evidence that the proffered reason was in fact a pretext for discrimination. *See, e.g.*, *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

Bhan argues that the Borgess defendants' proffered reason did not actually motivate their revocation of Bhan's hospital privileges. Bhan's sole argument is that the procedural inadequacies

8

of the review process leading to revocation are evidence of discrimination because there is no other explanation for their inadequacies. For example, Bhan notes that the Credentials Committee recommended that fourteen of Bhan's patient files be reviewed by an independent committee but only two were actually reviewed. Bhan's argument is insufficient to establish a pretext. First, Bhan has not introduced any evidence to support that the alleged procedural inadequacies violated the hospital's bylaws or otherwise deviated from normal procedure.[4] *See Carson v. Ford Motor Co.*, 413 F. App'x 820, 823–24 (6th Cir. 2011) (rejecting a plaintiff's argument that the procedural inadequacies of an investigation were sufficient evidence of a pretext). Second, Michigan law requires Bhan to connect these alleged procedural inadequacies to some evidence that the alleged discrimination was *race-based* discrimination. *See Lytle v. Malady*, 458 Mich. at 175–76, 579 N.W.2d at 916 ("[D]isproof of [a defendant's] articulated reason for an adverse employment decision defeats summary disposition only if such disproof also raises a triable issue that discriminatory animus was a motivating factor underlying the [] adverse action."); *Brintley*, 2012 WL 5817237, at *23. Mere allegations that the review procedures were inadequate is not sufficient evidence of a pretext. Therefore, Bhan's Elliott-Larsen Act claim against the Borgess defendants will be dismissed.[5]

### B. Americans with Disabilities Act Claim

Bhan alleges that BCHS has violated the Americans with Disabilities Act (ADA) by discriminating against Bhan on the basis of his disability.[6] Although Bhan's Second Amended

---

[4] Bhan alleges that the review process violated Borgess bylaws section IV, but does not explain how it violated the bylaws. (Compl., Docket no. 51, Page ID 1418.)

[5] Bhan also asserted a defamation claim against the Borgess defendants. However, because Bhan did not respond to the Borgess defendants' arguments in their Motion for Summary Judgment (docket no. 112), Bhan has abandoned the claim. *See, e.g.*, *Wilson v. City of Kalamazoo*, 127 F. Supp. 2d 855, 859 (W.D. Mich. 2000) (construing a party's failure to mention a claim in his brief as evidence of his intent to abandon the claim).

[6] In its order dated February 14, 2012, the Court dismissed from Plaintiff's ADA claim defendants Garrett, Mitchell, and Brooks-Williams because they do not "own, lease, or operate" BCHS, the place of public accommodation, within the meaning of 42 U.S.C. § 12182(a); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) (finding that the ADA does not impose liability upon individuals). (Docket no. 64, Page ID 1936.)

9

Complaint does not expressly reference Title I of the ADA, Bhan argues that he has alleged both Title I and Title III claims. (*See* Pl.'s Reply, Docket no. 109, Page ID 2316.) The Court will address each claim in turn.

*1. Title I*

Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674, 121 S. Ct. 1879, 1889 (2001). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodation (Title III)." *Id.* at 675, 121 S. Ct. at 1889. "Title I of the ADA provides that a covered employer 'shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Whitfield v. Tenn.*, 639 F.3d 253, 258 (6th Cir. 2011) (citing 42 U.S.C. § 12112(a)). To establish a *prima facie* case of employment discrimination through indirect evidence under Title I, a plaintiff must show that he (1) is disabled; (2) is otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) his employer knew or had reason to know of his disability; and (5) the position remained open while the employer sought other applicants or he was replaced. *Id.* (quoting *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)). Before filing a Title I claim, a plaintiff must receive a right-to-sue letter from the United States Equal Employment Opportunity Commission (EEOC) and then file suit within 90 days. *See* 42 U.S.C. §§ 12117(a), 2000e-5(e)(1); *Mayers v. Sedgwick Claims Mgmt. Servs., Inc.*, 101 F. App'x 591, 593 (6th Cir. 2004); *Peete v. Am. Standard Graphic*, 885 F.2d 331, 331–32 (6th Cir. 1989). Failure to exhaust this administrative remedy is grounds for dismissal. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000); *Peete*, 885 F.2d at 332.

In this case, there is no evidence that Bhan filed an EEOC charge or received a right-to-sue letter. Therefore, Bhan has not exhausted his available administrative remedies for purposes of his Title I ADA claim. Thus, his Title I claim will be dismissed.[7]

Even if Bhan had exhausted his administrative remedies, Bhan's claim would fail because Bhan has not shown that he was a BCHS employee for purposes of a Title I claim. "While it is clear that application of the ADA requires the existence of an employer-employee relationship, the circumstances constituting that relationship are not defined specifically by statute. Therefore, a court looks either to the express agreement of the parties, or to the common law principles of agency." *Janette v. Am. Fidelity Grp., Ltd.*, 298 F. App'x 467, 471 (6th Cir. 2008) (internal citation omitted). In general, courts in the Sixth Circuit "look to any express agreement between the parties as to their status as it is the best evidence of their intent." *Id.* For purposes of the ADA, independent contractors are not employees, and therefore are not "qualified individuals" protected by the ADA. *See, e.g.*, *Johnson v. City of Saline*, 151 F.3d 564, 567–69 (6th Cir. 1998).

In this case, Bhan does not deny that he was an independent contractor for purposes of his private practice. However, Bhan argues that he was a BCHS employee in his position as the medical director of the Critical Care Department. The contract between BCHS and CCPM ("PC") provides in relevant part:

> **Independent Contractor**. In the performance of the Independent Contractor Services to be rendered pursuant to this Agreement, it is mutually understood and agreed that PC and PC Designated Physician shall be at all times acting and performing as an independent contractor. Nothing in this Agreement is intended to create an employer/employee relationship or a joint venture relationship between the parties.

---

[7] In his Second Amended Complaint, within his ADA claim, Plaintiff also briefly references the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. However, plaintiffs are required to "exhaust administrative remedies before availing themselves of judicial remedies under the Rehabilitation Act." *Smith v. United States Postal Serv.*, 742 F.2d 257, 262 (6th Cir. 1984). There is no evidence that Bhan has exhausted his administrative remedies with respect to his Rehabilitation Act claim. Therefore, his claim will be dismissed. Even if this Court were to find that Bhan had exhausted his administrative remedies, Bhan's claim would fail because he has not presented evidence that he was denied any services based solely on his perceived disability. *See id*. § 794(a); *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988).

11

> The parties agree that the PC Designated Physician is not an employee of BCHS and, accordingly, is not eligible for any compensation, fringe benefits, pension, workers' compensation, sickness or health insurance benefits, or other similar benefits accorded employees of BCHS.... The parties agree that BCHS will not withhold on behalf of the PC Designated Physician sums for income tax, unemployment insurance, social security, or any other withholding pursuant to any law or requirement of any governmental body....
>
> Nothing in this Agreement is intended to allow BCHS to exercise control or direction over the manner or method by which the PC Designated Physician provides services, which are the subject matter of this Agreement.... PC reserves the right to designate the hours, duties, and work assignments and sequence of performance of the PC Designated Physician who is performing Independent Contractor Services pursuant to this Agreement, so long as this designation does not unduly compromise the value and the effectiveness of this Agreement .... In this regard, the sole interest of BCHS is to assure that all Independent Contractor Services shall be performed in a competent, efficient, and satisfactory manner and in accordance with the terms of this Agreement.

(Ex. 2, Def.'s Mot. Summ. J., Docket no. 107, Page ID 2275–76.) Thus, the express language of the agreement confirms that Bhan was an independent contractor for purposes of his position as medical director.

Bhan argues that the actual relationship between the parties supports the existence of an employer-employee relationship. When no express agreement exists, or when there is reason to doubt that the agreement reflects the actual relationship between the parties, courts may look to the common law for guidance. *See Janette*, 298 F. App'x at 472 (citing *Johnson*, 151 F.3d at 568). The Sixth Circuit has adopted a multi-factor test articulated by the Supreme Court. The factors include:

> [T]he hiring party's right to control the manner and means by which the product is accomplished; the skill required by the hired party; the duration of the relationship between the parties; the hiring party's right to assign additional projects; the hired party's discretion over when and how to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the hiring party's regular business; the hired party's employee benefits; and tax treatment of the hired party's compensation.

*Johnson*, 151 F.3d at 568 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24, 112 S. Ct. 1344, 1348 (1992)).

Bhan argues that the balance of factors weighs in favor of finding an employer-employee relationship. Specifically, Bhan argues that BCHS controlled the manner and means of Bhan's

12

employment, furnished the instrumentalities of the work, determined the duration of the relationship, and directed and controlled Bhan's assistants. However, the factors cited by Bhan are also consistent with the status of an independent contractor and consistent with the terms of the agreement. Although the record suggests that BCHS defined Bhan's central responsibilities, provided Bhan with the instrumentalities of his work, and hired and controlled Bhan's assistants, those facts do not undermine the terms of the agreement, which expressly deny that Bhan was intended to be an employee. Moreover, the following factors weigh in favor of finding Bhan was independent contractor: no employee benefits, the tax treatment of Bhan's compensation (no withholding), and the payment arrangement through CCPM. *Cf. Shah v. Deaconess Hosp.*, 355 F.3d 496, 500 (6th Cir. 2004) (holding that a doctor with hospital privileges was an independent contractor for purposes of a Title VII retaliation claim). Bhan also alleges that BCHS controlled the manner by which Bhan's duties were accomplished, but Bhan does not provide any examples that deviate from the language of the contract or otherwise suggest that BCHS exercised significant control over Bhan's day-to-day activities. Thus, even if the Court were to look beyond the express terms of the contract, the Court would conclude as a matter of law that Bhan was an independent contractor. Therefore, Bhan's Title I ADA claim will be dismissed.

## 2. *Title III*

Bhan also asserts a Title III claim against BCHS. Title III states, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "A person alleging discrimination under Title III must show (1) that he is disabled within the meaning of the ADA, (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation, (3) that the defendant took adverse

action against the plaintiff that was based upon the plaintiff's disability, and (4) that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation." *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999); *see also Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997) (combining the third and fourth elements as, "defendants either refused to make a reasonable accommodation for his disability or made an adverse employment decision regarding him solely because of his disability").[8] The term "public accommodation" is defined in terms of categories of facilities leased or operated by private entities, including hospitals. *See* 42 U.S.C. § 12181(7)(F).

In this case, BCHS argues that Title III does not extend to Bhan because he was not denied any privileges or accommodation that BCHS offers to its customers or clients. Although the Sixth Circuit has not yet decided the issue, some courts have held that Title III is limited to customers and patrons of the public accommodation, and does not extend to employees of those public accommodations on the basis of their employment. "Title III is most reasonably construed to mean the goods, services and facilities *offered to customers or patrons* of the public accommodation, not to individuals who work at the facility, whether those workers be paid employees, independent contractors, or unpaid volunteers." *Bauer v. Muscular Dystrophy Ass'n, Inc.*, 268 F. Supp. 2d 1281, 1291 (D. Kan. 2003) (emphasis in original) (interpreting Title III in light of the Supreme Court's decision in *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 121 S. Ct. 1879 (2001)); *see also Wojewski v. Rapid City Reg'l Hosp., Inc.*, 394 F. Supp. 2d 1134, 1144 (W.D.S.D. 2005), *vacated in part on other grounds by* 450 F.3d 338 (8th Cir. 2006) (finding a doctor with hospital privileges did not qualify as an "individual" for purposes of Title III because he was not a client or customer). In *Martin*, the Supreme Court did not reach the issue of whether Title III claims are limited to customers or clients

---

[8] As BCHS notes, not all cases include the fourth element as a *prima facie* element under Title III. However, it is relevant to whether BCHS has failed to accommodate Bhan.

of places of public accommodation because the plaintiff fit within the definition of client or customer. However, the majority opinion emphasized in its analysis that the plaintiff *was* a customer or client for purposes of Title III. *See* 532 U.S. at 680 n.33, 121 S. Ct. at 1892 n.33. Moreover, the majority opinion did not reject Justice Scalia's dissenting argument that individuals who work at places of public accommodation are outside Title III's scope. *Id.* at 693, 121 S. Ct. at 1898–99 (Scalia, J. dissenting) (interpreting the structure of the ADA, the text of Title III, and the Department of Justice regulations promulgating Title III to extend to customers of a public accommodation but not employees).

Here, the most reasonable reading of Title III is that its prohibitions against discrimination extend to customers or clients of the public accommodation, but not employees or independent contractors on the basis of their employment. Therefore, the Court will dismiss Bhan's Title III claim.

Even if this Court were to extend Title III to hospital employees or independent contractors, Bhan has not alleged that he requested any accommodation related to his perceived disability or that BCHS failed to accommodate his disability. "The ADA definition of the term 'discriminate' includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the covered entity.'" *Smith*, 129 F.3d at 866 (quoting 42 U.S.C. 12112(b)(5)). "The 'disabled individual bears the burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable.'" *Id.* (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012)). The employer, however, bears the burden of persuasion on whether a proposed accommodation would impose an undue hardship. *Id.*

In this case, Bhan has not alleged that he requested any accommodation. Rather, Bhan argues that BCHS employees perceived him as disabled, *see* 42 U.S.C. § 12102(1)(C). However, Bhan has not provided sufficient evidence that any relevant BCHS decision makers perceived Bhan as disabled at the time of the review process. Bhan's evidence of perceived disability is limited to his allegations that he was repeatedly asked to obtain independent medical examinations after his stroke at the request of Mitchell, Garrett, and Williams. However, Bhan has not introduced any admissible evidence of these requests during the relevant period, nor do such requests properly support a finding that BCHS failed to make a reasonable accommodation on the basis of a perceived disability.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the Motions for Summary Judgment.[9]

An order consistent with this Opinion will be entered.


Dated: April 24, 2013                              /s/ Gordon J. Quist
                                                  GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE

---

[9] Although Integrated Health Partners (IHP) is listed as a party in the Second Amended Complaint, Bhan has never requested a summons for IHP, and IHP was never properly served. Moreover, Bhan has not alleged a claim against IHP. In his Complaint, Bhan merely requests an injunction to enjoin IHP from changing his credentials status during the course of the lawsuit. It is a basic pleading requirement that a plaintiff attribute factual allegations to particular defendants. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) (holding that to state a claim a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without sufficient allegations of specific conduct, the complaint is subject to dismissal. *See, e.g.*, *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant). Thus, the Court will terminate IHP as a party to this case.